# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

REJEANIA LOUISE MILLER,    )
    )
       Plaintiff,    )
    )
v.    )      Case No. CIV-14-1124-R
    )
TRACY FORD et al.,    )
    )
       Defendants.    )

## REPORT AND RECOMMENDATION

Plaintiff Rejeania Louise Miller, an Oklahoma prisoner appearing pro se and proceeding *in forma pauperis*, has filed suit under 42 U.S.C. § 1983, alleging that state prison officials violated various rights guaranteed to her by the United States Constitution. *See* Am. Compl. (Doc. No. 11) at 1-17; Am. Compl. Exs. (Doc. Nos. 11-1 to 11-84).[1] United States District Judge David L. Russell referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b). Having reviewed the Amended Complaint, the undersigned recommends that it be dismissed in its entirety for failing to state a claim upon which relief can be granted.[2]

---

[1] Citations to documents filed with the Court use the page and exhibit numbers assigned by the Court's electronic filing system. When quoting from the Amended Complaint, the undersigned has occasionally altered the capitalization and punctuation to improve readability.

[2] Following the undersigned's issuance of a recommendation that the claims in Plaintiff's initial Complaint be dismissed, *see* R. & R. (Doc. No. 8), Plaintiff filed her Amended Complaint, and the matter was re-referred to the undersigned based on that amended pleading, *see* Order (Doc. No. 17). Plaintiff's Amended Complaint narrows significantly the factual bases for Plaintiff's potential claims against each Defendant. *Compare, e.g.*, Am. Compl. at 2, 8, 15, *with* Compl. at 1-10; *see also* R. & R. at 9-10, 30; Pl.'s Obj. to R.

## STANDARD OF REVIEW

The Court is obligated to review Plaintiff's amended pleading in order to identify its cognizable claims and to dismiss the pleading, or any portion thereof, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). To survive dismissal, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007). A claim is facially plausible when the well-pled factual allegations, accepted as true and viewed in the plaintiff's favor, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" under the governing law. *Iqbal*, 556 U.S. at 678, 679; *see Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013).

A pro se plaintiff's complaint is "construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," so that any potentially valid claim can be fairly decided on its merits. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, a pro se plaintiff must allege "facts on which a recognized legal claim could be based," *id.*, and district courts should not "construct . . . claims or grounds [for] relief"

---

& R. (Doc. No. 10) at 3 (noting that the Amended Complaint "will provide the court with clarity on who is responsible for violations and specification on what took place on actual date [sic]").

not fairly presented in the complaint, *Windsor v. Colo. Dep't of Corr.*, 9 F. App'x 967, 970 (10th Cir. 2001).

## PLAINTIFF'S ALLEGATIONS AND RELIEF SOUGHT

Plaintiff is an inmate at Mabel Bassett Correctional Center ("MBCC") in McLoud, Oklahoma. Am. Compl. at 1. On October 10, 2014, Plaintiff filed this action against four MBCC employees: Tracy Ford, a male correctional officer; Jacqueline Garrett-King, a female captain; Rickey Moham, MBCC's then-warden; and Millicent Newton-Embry, MBCC's former warden. *See* Am. Compl. at 1-2, 8-9, 15; Fed. R. Civ. P. 15(c)(1)(B); Compl. Ex. 2 (Doc. No. 1-2) at 1 (envelope postmarked Oct. 10, 2014); *cf. Love v. Daniels*, 549 F. App'x 801, 804 (10th Cir. 2013) (concluding that prisoner's notice of appeal was "filed" on the date postmarked on envelope). The allegations in Plaintiff's Amended Complaint stem from four events while Plaintiff was incarcerated at MBCC: (1) a December 25, 2010 incident where five correctional officers, including Defendants Ford and Garrett-King, detained Plaintiff in the nude after Plaintiff tried to dispose of contraband discovered during a routine strip search; (2) Plaintiff's attempts to obtain medical treatment for her shoulder and foot, which were injured on December 25, 2010; (3) an "unauthorized" and "incorrect sanction" for a minor rule violation, which Plaintiff received on January 11, 2011; and (4) a September 21, 2012 incident where Defendant Ford made "inappropriate and unprofessional comment[s]" to Plaintiff and another inmate. *See generally* Am. Compl. at 2-15.

*A. The December 25, 2010 Incident*

Plaintiff had expected a family member to visit her at MBCC on December 25, 2010. *See id.* at 8, 12; Am. Compl. Ex. 20, at 1. Plaintiff was pat-searched before entering the visitation room, where she waited for her visitor to arrive. *See* Am. Compl. at 8, 12. When her visitor did not arrive, Plaintiff made a "brief stop" at the inmates' restroom before going to the strip-search area to exit the visitation room. *Id.* at 12. Corporal Penn and Lieutenant Lorentz asked Plaintiff to "remove all of her clothing and shoes" and to complete the "initial strip-search process" one time, which Plaintiff did. *Id.* Corporal Penn then told Lieutenant Lorentz that Plaintiff needed to "s[qu]at and cough again" because Plaintiff "looked high or under the influence of something." *Id.* at 13.

"This is when Plaintiff attempted to make her way to the designated offender toilet stool in an attempt to dispose of the detected contraband." *Id.* Defendants Garrett-King and Ford promptly responded to Corporal Penn's call for backup. *See id.* Defendant Ford, who is male, picked Plaintiff up off of the floor and held Plaintiff's hands behind her back in a "cuff-like position" while a female officer put Plaintiff's clothes on her. *See id.* at 3, 7-8, 12-14. Defendant Ford restrained Plaintiff in this position, "making full physical body personal contact," for up to eight minutes before escorting Plaintiff to her housing unit's showers. *See id.* at 3, 7. According to Plaintiff, Defendant Garrett-King "knowingly participated" in this "barbarous invasion" of Plaintiff's privacy by allowing Defendant Ford to restrain Plaintiff "in her total nudeness" even though four female officers were also present. *Id.* at 3, 8-9, 10-11.

Plaintiff alleges that Defendant Ford's and Defendant Garrett-King's conduct on December 25, 2010, caused her to suffer lasting physical, mental, and emotional injuries. *See id.* at 9. The "sexual nature" of the incident in particular brought back traumatic memories of Plaintiff's past sexual abuse, which in turn caused Plaintiff to suffer mental anguish, anxiety, nightmares, insomnia, and decreased appetite. *See id.* at 10-11; Am. Compl. Exs. 20, 21, 25. Plaintiff also alleges that Defendant Ford's "aggressive restraint" caused her "severe shoulder pain," "tingling and numbness" in her fingers, tinnitus, and a subcutaneous knot or cyst on her foot. *See* Am. Compl. at 9; Am. Compl. Exs. 12, 21, 25. Plaintiff occasionally sought pain medication and diagnostic tests for these symptoms between April 2011 and August 2014. *See* Am. Compl. at 15; Am. Compl. Exs. 9, 12, 16, 35, 38-41, 43, 61, 67. Plaintiff asserts that unidentified MBCC officials "intentionally prolonged" her physical pain while she pursued her "concerns" about Defendant Ford's "hostile behavior" through the prison grievance process. *See* Am. Compl. at 9.

### B. The January 2011 Disciplinary Sanction

On January 11, 2011, Plaintiff "was served [with] a Class B misconduct infraction" for a rule violation predating "the Christmas . . . incident." *Id.* at 15.[3] The disciplinary officer imposed a $10.00 fine, revoked 60 days' worth of "earned good time/achievement credits," and sentenced Plaintiff to serve 20 days in discretionary

---

[3] On January 10, 2011, Plaintiff pled guilty to "interfering with taking of count"—a "Class B" rule violation per MBCC's 2007-2008 Inmate Manual—for conduct that occurred on December 15, 2010. *See* Am. Compl. Ex. 1, at 1, 6.

disciplinary segregation. *See id.* at 1, 2. The penalties were upheld on administrative appeal. *Id.* at 1.

Plaintiff alleges that unnamed "MBCC prison officials are guilty of violating policies" because they imposed the "incorrect sanction for [this] minut[e] infraction." *Id.* at 8, 15; *see also* Am. Compl. Ex. 1, at 1-2, 4, 6, 8; Am. Compl. Exs. 2, 3, 4. Plaintiff objects solely to the disciplinary-segregation sentence, which, at least in 2007-2008, was an authorized penalty for "Class A" infractions only, and therefore exceeded the penalty authorized for Plaintiff's "Class B" infraction. *See* Am. Compl. at 9, 15; Am. Compl. Ex. 1, at 2, 4, 6, 8; Am. Compl. Exs. 2, 3, 4. Plaintiff later filed multiple Requests to Staff asking various MBCC officials to "correct" her segregated-housing sentence. Am. Compl. Exs. 2, 3, 4. On May 19, 2011, an MBCC official responded that Plaintiff "d[id] not have an incorrect sanction" for her "misconducts." Am. Compl. Ex. 4, at 1. Plaintiff was released from disciplinary segregation in early July 2011. *See* Am. Compl. Ex. 15, at 1.

### C. The September 21, 2012 Incident

Plaintiff encountered Defendant Ford on September 21, 2012, while Plaintiff was in the prison yard helping another inmate with her broken wheelchair. Am. Compl. at 4-5. Defendant Ford approached both inmates "in an . . . aggressive manner and rudely told [them] to go away" for afternoon count. *Id.* at 5. Plaintiff complied with Defendant Ford's order while also trying to explain that the other inmate's wheelchair was broken. *See id.* Defendant Ford "yell[ed] and shout[ed]" for Plaintiff and the other inmate "to just go away" and made "inappropriate and unprofessional comment[s]" to Plaintiff about a

third inmate's pending sexual-assault investigation. *See id.* When Plaintiff told Defendant Ford "that [she] was going to report [his] comments and behavior" to the warden, Defendant Ford "laughed" and said, "'Good luck with that.'" *Id.* Plaintiff then "became fearful" of Defendant Ford's "further retaliation tactics" and was "scared and intimidated of what was to come next." *Id.* at 5-6. Plaintiff attributes Defendant Ford's "ongoing retalia[tory] actions" to "the Christmas of 2010 incident" and to Plaintiff's comment that she "was considering [filing] a tort civil claims lawsuit." *Id.* at 6.

### D. Relief Sought

Plaintiff seeks damages against Defendant Ford, Defendant Garrett-King, and the unnamed MBCC officials "in their individual capacities." *Id.* at 11, 14; *see also* Pl.'s Obj. to R. & R. at 3 ("Plaintiff is suing officials in their individual capacit[ies] to seek award of damages which said officials are personally responsible for violations."). Plaintiff also seeks an "injunction . . . to deter . . . future violations of this nature." Am. Compl. at 17. Plaintiff further indicates that she seeks a court order directing MBCC's current warden to change the prison's strip-search policy to specifically prohibit male officers from being present while a female inmate is nude. *See, e.g.*, Am. Compl. Ex. 20, at 1-2; Am. Compl. Ex. 25, at 2.

### ANALYSIS

To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States," and that the violation "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). When a defendant is sued in his or her individual

capacity under § 1983, the plaintiff must show specific elements as to each defendant. First, the plaintiff must establish the defendant's "personal involvement or participation" in the alleged violation of a federal right. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *see also Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Second, the plaintiff must establish a causal connection between the acts of that particular defendant and the violation of a federal right. *See Iqbal*, 556 U.S. at 676; *Pahls v. Thomas*, 718 F.3d 1210, 1225-26, 1228 (10th Cir. 2013). Finally, the plaintiff must establish that the defendant acted with the state of mind required for the underlying federal rights violation. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986).

A. *Individual Capacity Claims Against Defendants Ford, Garrett-King, and Unnamed MBCC Officials*

As detailed below, it is plain from the Amended Complaint that the two-year limitations period for Plaintiff's § 1983 claims (which concern events occurring in December 2010, January 2011, and September 2012) expired prior to Plaintiff filing her lawsuit on October 10, 2014. A district court may dismiss a § 1983 claim based on an affirmative defense—such as an expired statute of limitations—"when the defense is obvious from the face of the complaint and no further factual record is required to be developed." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks omitted); *see also Jackson v. Standifird*, 463 F. App'x 736, 737 (10th Cir. 2012) ("Dismissal of a claim as time-barred is treated as a dismissal for failure to state a claim." (citing *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997))). The length of the limitations period, as well as the applicability of any tolling rules, is determined by

the forum state's law governing personal-injury suits generally. *Owens v. Okure*, 488 U.S. 235, 236 (1989); *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). Oklahoma's relevant limitations period is two years. *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011) (citation omitted) (citing Okla. Stat. tit. 12, § 95(A)(3)).

### 1. Accrual of Plaintiff's Claims

A § 1983 claim accrues, and the applicable limitations period begins to run, "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (internal quotation marks omitted). In most cases, the state actor's allegedly unconstitutional conduct itself—i.e., "the injury which is the basis of the action"—triggers the applicable statute of limitations. *Price v. Philpot*, 420 F.3d 1158, 1163 (10th Cir. 2005); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) (noting that, as a general rule, "accrual occurs when the plaintiff has a complete and present cause of action"—i.e., "when the plaintiff can file suit and obtain relief" (alteration and internal quotation marks omitted)).

As explained in the undersigned's previous Report and Recommendation regarding Plaintiff's initial Complaint, the nature of each of Plaintiff's claims is such that the accrual of those claims would be immediate. *See* R. & R. at 17 ("Plaintiff states nothing to indicate that she would not have immediately known or had reason to know of her alleged injuries. Thus, any viable claim would have accrued on the respective date the incident occurred . . . ." (citation omitted)). The relevant allegations in Plaintiff's Amended Complaint, which are substantially similar to those in the original pleading,

provide no basis for reaching a different conclusion at this juncture. *Compare* Am. Compl. at 10-11, *with* Compl. at 5-6.

a. Defendant Ford

Plaintiff seeks to hold Defendant Ford personally liable for his allegedly unconstitutional conduct on December 25, 2010, and September 21, 2012. *See* Am. Compl. at 4-6, 11. Regarding the December 25, 2010 incident, Plaintiff's allegations suggest claims for (1) violation of the right to bodily privacy, *see Moore v. Atherton*, 28 F. App'x 803, 806 (10th Cir. 2001) (holding that convicted "prisoners retain a limited constitutional right to bodily privacy, 'particularly as to searches viewed or conducted by members of the opposite sex'" (quoting *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995))); and (2) excessive force, *see Hudson v. McMillian*, 503 U.S. 1, 4 (1992) (holding that "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment" forbidden by the Eighth Amendment).[4]

_____

[4] Plaintiff repeatedly describes Defendant Ford's conduct on December 25, 2010, as "sexual" in nature. *See, e.g.*, Am. Compl. at 2, 4, 10-11. A prison guard's "sexual assault" or "sexual abuse" of an inmate may be "sufficiently serious to constitute a violation under the Eighth Amendment." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998); *see also Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 10th Cir. 1999) ("[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society." (internal quotation marks omitted)). However, neither Plaintiff's perception of Defendant Ford's conduct nor her conclusory allegation that the officer's presence on the scene that day "seemed" to have been motivated by his own "sexual desire" is sufficient to state a cognizable Eighth Amendment claim against Defendant Ford. *See, e.g.*, *Ellis v. Elder*, No. 7:08-cv-642, 2009 WL 275316, at *3 (W.D. Va. Feb. 4, 2009) ("In stating such a claim, . . . the inmate must allege facts on which he could prove that the unwanted touching had some sexual aspect to it; his own perceptions alone that the contact was of a sexual nature are not sufficient.").

With respect to bodily privacy, Plaintiff complains that Defendant Ford viewed Plaintiff in the nude when he responded to Corporal Penn's call for backup during a strip-search of Plaintiff. *See* Am. Compl. at 2, 4, 11.[5] With respect to excessive force, Plaintiff asserts that Defendant Ford "aggressive[ly] restrain[ed]" her when, after responding to the call for back up, he picked Plaintiff up off of the floor "with his bare (no-gloved) hands" and held her arms behind her back in a "cuff-like position" for up to eight minutes while a female officer "force-dressed" Plaintiff. *Id.* at 3, 7-8, 12-14. Because both sets of allegations reflect injuries contemporaneously known to Plaintiff, the accrual date for the relevant claims is December 25, 2010. *Cf. Hayes*, 70 F.3d at 1147 ("[A] prisoner's right to privacy may be violated by a single search." (citation omitted)); *Stevenson v. Grace*, 356 F. App'x 97, 98 (10th Cir. 2009) ("'A § 1983 claim for excessive force in effectuating an arrest accrues at the time of arrest.'" (quoting *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007))).

---

[5] Plaintiff's Amended Complaint makes clear that Defendant Ford neither "conducted" nor "viewed" the routine strip-search that Plaintiff underwent on December 25, 2010. *See* Am. Compl. at 13. Rather, Defendant Ford arrived on the scene only after Plaintiff tried to dispose of contraband while undressed. *See id.* The undersigned assumes without deciding that Plaintiff retained a reasonable expectation of bodily privacy under these circumstances. *See Levoy v. Mills*, 788 F.2d 1437, 1439 n.** (10th Cir. 1986) ("In [*Bell v. Wolfish*, 441 U.S. 520, 558 (1979)], the Supreme Court assumed that prison inmates retain some measure of Fourth Amendment rights. We do not believe that the Supreme Court's decision in *Hudson v. Palmer*, 468 U.S. 517 (1984), in which the Court held that a prisoner has no reasonable expectation of privacy in his prison cell, eviscerates the requirement set forth in *Wolfish* that personal body searches of inmates must be reasonable under the circumstances." (citing *Hudson*, 468 U.S. at 555 n.31 (Stevens, J., dissenting))).

Plaintiff allegations also suggest a claim that Defendant Ford "retaliated" against her because he was "holding a personal grudge . . . from [the] December 25, 2010 incident." *See* Am. Compl. at 4-5; Am. Compl. Ex. 43, at 2; *see Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (holding that prison officials may not "retaliate against or harass an inmate because" the inmate exercised his or her constitutional rights). Plaintiff identifies one specific instance, on September 21, 2012, when Defendant Ford allegedly retaliated against (or harassed) her by "making inappropriate and unprofessional comment[s]" because Plaintiff had "mentioned that [she] was considering" filing a civil lawsuit over "the Christmas of 2010 incident." Am. Compl. at 5-6.[6] Thus, Plaintiff's retaliation claim accrued on the date that Defendant Ford made the challenged comments.

Because Plaintiff's cognizable § 1983 claims against Defendant Ford in each instance accrued more than two years before she filed this lawsuit in October 2014, such claims must be dismissed as time-barred unless Plaintiff's allegations implicate a proper ground to find that the limitations period was tolled.

### b. Defendant Garrett-King

Plaintiff alleges that Defendant Garrett-King "knowingly participated" in the "invasion" of Plaintiff's privacy on December 25, 2010, by allowing Defendant Ford to restrain Plaintiff "in her total nudeness" even though four female officers were also present. *See* Am. Compl. at 3, 8-9, 10-11. Plaintiff also alleges that Defendant Garrett-

---

[6] Exhibits attached to the Amended Complaint indicate that Plaintiff had already filed a § 1983 lawsuit—or at least had filed several administrative grievances—against Defendant Ford in September 2012. *See* Am. Compl. Exs. 13, 22, 23, 25, 26, 27, 43.

King on that day failed to protect Plaintiff from physical and emotional harm because she "never took any appropriate actions to intervene," such as asking Defendant Ford to leave the strip-search area. *See id.* at 9 (emphasis omitted). *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (holding that "a prison official may be held liable" under § 1983 if she failed to take reasonable measures knowing that the circumstances posed "a substantial risk of serious harm" to an inmate's health or safety). Again, this was an injury contemporaneously known by Plaintiff and, thus, Plaintiff's claims against Defendant Garrett-King accrued on December 25, 2010. *See Hayes*, 70 F.3d at 1147 (privacy claim); *Coit v. Zarvas*, No. 12-cv-609, 2013 WL 3448340, at *1, *6 (D. Colo. July 9, 2013) (failure-to-protect claim). Because Plaintiff's cognizable § 1983 claims against Defendant Garrett-King accrued more than two years before she filed this lawsuit in October 2014, such claims must be dismissed as time-barred unless Plaintiff's allegations implicate a proper ground to find that the limitations period was tolled.

### c. Unnamed MBCC Officials

Plaintiff's Amended Complaint also includes two attempted § 1983 claims against unidentified MBCC officials in their individual capacities: (1) that in spring 2011, these officials violated prison policy by imposing an unauthorized and "incorrect sanction" as punishment for Plaintiff's "Class B misconduct infraction," Am. Compl. at 8-9, 15; *see also* Pl.'s Obj. to R. & R. at 3; and (2) that such officials "intentionally prolonged" her physical pain by delaying medical care after she injured her shoulder and foot in the

December 25, 2010 strip-search incident, Am. Compl. at 9.[7]  Both of these sets of allegations appear on their face to concern injuries occurring, and immediately known to Plaintiff, more than two years prior to the filing of Plaintiff's Complaint in October 2014. Accordingly, such claims must be dismissed as time-barred unless Plaintiff's allegations implicate a proper ground to find that the limitations period was tolled.

2. Tolling

As a result of the above findings, Plaintiff's individual capacity claims must be dismissed unless some ground for tolling is indicated by Plaintiff's allegations.  Tolling of a § 1983 limitations period is governed by state law, and, in Oklahoma, such tolling is generally only permitted when the plaintiff can demonstrate that timely filing was prevented due to a "legal disability," such as incompetency or status as a minor, or because the defendant engaged in "false, fraudulent, or misleading conduct calculated to lull [the] plaintiff[] into sitting on [her] rights." *Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir. 2004) (internal quotation marks omitted).

In the prior Report and Recommendation, the undersigned found that none of the accepted grounds for tolling were indicated by the allegations in Plaintiff's original Complaint.  *See* R. & R. at 15-16; *see also id.* at 19-20.  Again, Plaintiff's allegations in her Amended Complaint do not provide a basis for reaching a different conclusion.

When Plaintiff objected to the prior Report and Recommendation, she did not expressly acknowledge—let alone challenge—the undersigned's recommendation that

[7] As explained below, these two sets of allegations also fail to state a claim upon which relief may be granted.

14

Plaintiff's claims against Defendants Ford and Garrett-King should be dismissed as time-barred. *See generally* Pl.'s Obj. to R. & R. at 1-5. Plaintiff did note, however, that "she understood that she had to follow certain instructions before filing the actual 42 U.S.C. § 1983 Complaint, which she has followed the proper chain-of-command procedures by exhaust[ing] all of her administrative remedies in order to proceed." *Id.* at 2. The undersigned liberally construes Plaintiff's statement as an argument that the two-year limitations period was tolled while Plaintiff exhausted her administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a).

The Tenth Circuit has held that federal equitable-tolling rules do not apply in § 1983 cases. *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007). Thus, absent exceptional circumstances not present in this case, Oklahoma law governs "whether the filing of mandatory grievances requires tolling at all, and, if so, how that tolling is to be calculated."[8] *Id.* at 1241; *Alexander*, 382 F.3d at 1217 n.5. The Tenth

---

[8] The Tenth Circuit has also "note[d] that 'federal courts possess the power to use equitable principles to fashion their own tolling provisions in exceptional situations in which state statute of limitations eradicate rights or frustrate policies created by federal law.'" *Alexander*, 382 F.3d at 1217 n.5 (quoting *Rodriguez v. Holmes*, 963 F.2d 799, 805 (5th Cir. 1992)); *see also id.* at 1219 ("In the appropriate case, exceptional circumstances may justify tolling a statute of limitations." (citing *Van Tu v. Koster*, 364 F.3d 1196, 1199-1200 (10th Cir. 2004); *United Sates v. Clymore*, 245 F.3d 1195, 1199 (10th Cir. 2001))). This narrow exception—which is not applicable here—appears to have survived the *Roberts* Court's directive that district courts should not apply federal equitable-tolling rules in § 1983 cases. *See, e.g.*, *Young v. Davis*, 554 F.3d 1254, 1258 (10th Cir. 2009) ("This court noted also that '[i]n the appropriate case, exceptional circumstances may justify tolling a statute of limitations.'" (quoting *Alexander*, 382 F.3d at 1217)); *Mondragon*, 519 F.3d at 1082 ("Federal law . . . determines the date on which the claim accrues and the limitations period starts to run. State law governs any tolling of that

Circuit has on prior occasions assumed without deciding that, under Oklahoma law, the applicable two-year limitations period may be tolled while a prisoner exhausts his or her administrative remedies before coming to federal court. *See, e.g.*, *Jackson*, 463 F. App'x at 738; *Laubach v. Scibana*, 301 F. App'x 832, 837 (10th Cir. 2008). But it is Plaintiff's burden to show that the limitations period should be tolled in this case. *See Gilyard v. Gibson*, 612 F. App'x 486, 488 & n.3 (10th Cir. 2015) (citing *Roberts*, 484 F.3d at 1240; *Ray v. Okla. Furniture Mfg. Co.* 40 P.2d 663, 668 (Okla. 1934)). The undersigned has found no authority holding that Oklahoma law requires tolling of the applicable limitations period—which begins to run when the prisoner has reason to know of the injury that is the basis of a § 1983 action—while the prisoner exhausts administrative remedies as required by the PLRA. *Cf. Brown v. Creek Cnty. ex rel. Creek Cnty. Bd. of Cnty. Comm'rs*, 164 P.3d 1073, 1075-76 (Okla. 2007) (explaining that, because exhaustion of administrative remedies is a jurisdictional requirement for bringing a claim under Oklahoma's Governmental Tort Claims Act, the one-year limitations period applicable to such claims does not begin to run until the plaintiff's administrative claim "has been denied or is deemed denied"); *Woodford v. Ngo*, 548 U.S. 81, 101 (2006) ("[T]he PLRA exhaustion requirement is not jurisdictional . . . ."). Accordingly, none of the relevant allegations in Plaintiff's Objection or Amended Complaint present a meritorious basis for tolling. *See Gilyard*, 612 F. App'x at 488; *Alexander*, 382 F.3d at 1217, 1219.

period, except that federal law might also allow additional equitable tolling in rare circumstances." (internal citations omitted)).

Even if Oklahoma law does require tolling in this situation, however, Plaintiff still must, through her well-pled allegations, plausibly "establish[] a factual basis for tolling." *See Aldrich v. McCullouch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). Exhibits attached to Plaintiff's Amended Complaint indicate that Plaintiff's attempts to administratively "correct" her segregated-housing sentence were finally rejected on May 19, 2011. Am. Compl. Ex. 4, at 1. On January 26, 2012, an ODOC employee informed Plaintiff that she was "now out of time" to pursue any administrative remedies related to Defendant Ford's and Defendant Garrett-King's involvement in the December 25, 2010 incident because she had "failed to follow previous instructions for filing this grievance." Am. Compl. Ex. 23 (Doc. No. 11-23) at 1. Accordingly, Plaintiff's claims against Defendants Ford, Garrett-King, and the Unnamed MBCC Officials would still be time-barred even if the limitations period was tolled while she was engaged in the administrative review process.[9]

3. Conclusion

As set forth above, Plaintiff's individual-capacity claims are time-barred and should be dismissed with prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c)(1); *see also Murphy v. Klein Tools, Inc.*, 935 F.2d 1127, 1128-29 (10th Cir. 1991) ("[A] dismissal on limitations

---

[9] Plaintiff did not file any formal grievances specifically concerning the "retaliatory" comments that Defendant Ford allegedly made on September 21, 2012, or concerning the Unnamed MBCC Officials' alleged delay in treating her shoulder pain after the December 25, 2010 incident. *See, e.g.*, Am. Compl. Ex. 43 (Doc. No. 11-43) at 1-4; Am. Compl. Ex. 41 (Doc. No. 11-41) at 1.

grounds is a judgment on the merits."); *Parker v. Dinwiddie*, 258 F. App'x 200, 201 (10th Cir. 2007) (same); *see, e.g., Pemberton v. Patton*, No. CIV-14-129-D, 2015 WL 1638638, at *4, *16-18 (W.D. Okla. Apr. 13, 2015) (dismissing §§ 1983 and 1985 claims with prejudice due to untimeliness), *aff'd*, No. 15-6089, 2016 WL 286871 (10th Cir. Jan. 25, 2016).

### B. *Claims Against Unnamed MBCC Officials*

As noted above, Plaintiff asserts two claims against unidentified MBCC officials in their individual capacities, both of which have been found by the undersigned to be time-barred based on the allegations of the face of Plaintiff's Amended Complaint. The undersigned notes, however, that even if those claims are liberally construed to include acts or injuries occurring within the limitations period, the claims are additionally subject to dismissal for failure to state a claim upon which relief may be granted.

First, Plaintiff alleges that MBCC officials violated prison policy by imposing an unauthorized and "incorrect sanction" as punishment for Plaintiff's "Class B misconduct infraction." Am. Compl. at 8, 15. Plaintiff objects to serving 20 days in disciplinary segregation, which, at least in 2007-2008, was an authorized penalty for "Class A" infractions only, and therefore exceeded the penalty authorized for Plaintiff's "Class B" misconduct conviction. *See* Am. Compl. at 9, 15; Am. Compl. Ex. 1, at 2, 4, 6, 8; Am. Compl. Exs. 2, 3, 4. These allegations do not state a cognizable claim for relief under § 1983 because a prison official's "failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citing *Davis v. Sherer*, 468 U.S. 183, 194 (1984)); *see also Gaines v.*

*Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).  Nor does Plaintiff allege any facts supporting a reasonable inference that MBCC officials deprived Plaintiff of a protected liberty interest without due process of law, *see Sandin v. Conner*, 515 U.S. 472, 485-87 (1995), or that serving 20 days in disciplinary segregation was a "cruel and unusual punishment" for disrupting institutional count, *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987); *see also Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003) (noting that the Eighth Amendment applies to prison disciplinary sanctions).

Second, Plaintiff alleges that unidentified MBCC officials "intentionally prolonged" her physical pain by delaying medical care after she injured her shoulder and foot in the December 25, 2010 strip-search incident.  Am. Compl. at 9.  The Eighth Amendment imposes on prison officials an "obligation to provide medical care for those whom [they are] punishing by incarceration."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  However, "[b]ecause society does not expect that prisoners will have unqualified access to healthcare," *Hudson*, 503 U.S. at 9, a prisoner-plaintiff cannot hold a prison official personally liable under § 1983 unless the prisoner shows that he or she suffered "acts or omissions sufficiently harmful to evidence deliberate indifference to [the prisoner's] serious medical needs," *Gamble*, 429 U.S. at 106.

The deliberate-indifference test has two components—one objective and one subjective.  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The objective component is met if "the deprivation at issue was . . . 'serious'" enough to violate the Eighth Amendment.  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer*,

511 U.S. at 834). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (internal quotation marks omitted). Where, as here, a prisoner seeks to recover for "harm caused by a delay in medical treatment, [s]he must show that the delay resulted in substantial harm in order to satisfy the objective prong of the deliberate indifference test." *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (internal quotation marks omitted). The subjective component is met if the prison official acted or failed to act knowing that the circumstances posed "a substantial risk of serious harm" to the inmate's health or safety. *Farmer*, 511 U.S. at 847.

The Amended Complaint contains well-pled facts supporting a reasonable inference that Plaintiff suffered from some condition—perhaps an old shoulder injury—that had been diagnosed by a physician as mandating treatment with pain medication and cortisone injections after December 25, 2010. *See, e.g.*, Am. Compl. at 9, 15; Am. Compl. Exs. 21, 38, 39, 40, 41, 47, 67. However, Plaintiff does not allege facts supporting a reasonable inference that any MBCC official intentionally delayed medical care knowing that his or her conduct posed a substantial risk of serious harm to Plaintiff's health or safety. On the contrary, exhibits attached to the Amended Complaint show that MBCC medical personnel promptly responded to Plaintiff's requests for pain medication and clinic visits between April 2011 and August 2014. *See* Am. Compl. Exs. 8, 9, 12, 17, 35, 38, 39, 40, 41, 58, 59, 60, 61, 67. Several of those exhibits also indicate that Plaintiff simply "disagree[d] with the judgment of medical personnel concerning the most

appropriate treatment," *Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 795 (10th Cir. 2013), for Plaintiff's shoulder pain. *See, e.g.*, Am. Compl. Exs. 12, 17, 38, 39. "Without more, such a disagreement does not rise to the level of a constitutional violation." *Weldon*, 512 F. App'x at 795 (citing *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1137 (10th Cir. 2005)).

Accordingly, these claims are additionally subject to dismissal without prejudice for failure to state a claim upon which relief can be granted under § 1983. *See* 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c)(1); *Phillips v. Pub. Serv. Co. of N.M.*, 58 F. App'x 407, 409 (10th Cir. 2003).

### C. Individual Capacity Claims Against Defendants Moham and Newton-Embry

Mr. Moham and Ms. Newton-Embry are named as Defendants only in the Amended Complaint's caption. *See* Am. Compl. at 1, 2, 8. In contrast to her initial pleading, Plaintiff in her Amended Complaint does not allege any facts suggesting that either of these former MBCC wardens personally violated Plaintiff's federal constitutional rights. *Compare* Compl. at 4-5, *with* Am. Compl. at 2-14; *see also* Am. Compl. at 2, 8 (listing Mr. Ford and Ms. Garrett-King as the only two Defendants to this action); R. & R. at 6-7 (discussing Plaintiff's original allegations against Ms. Newton-Embry and Mr. Moham). Due to the absence of any allegations to support individual-capacity claims against Defendants Moham and Newton-Embry, and because neither Defendant currently holds a position that would make him or her a proper defendant to an official-capacity claim, these Defendants should be dismissed. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-

capacity defendants only for money damages and official-capacity defendants only for injunctive relief." (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)); *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993) (noting that courts "look to the substance of the pleadings," including the type of relief sought, "in order to determine whether the suit is for individual or official liability").

### D. Official Capacity Claim Against MBCC Warden

Although Plaintiff's claims against Defendants Moham and Newton-Embry in their respective official capacities as MBCC warden should be dismissed as to each of them, the claims do not abate altogether but proceed against MBCC's current warden. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."). With respect to this claim, Plaintiff seeks an "injunction . . . to deter . . . future violations" of female inmates' privacy rights. Am. Compl. at 17. Exhibits attached to the Amended Complaint indicate that Plaintiff seeks a court order directing MBCC's current warden to change the prison's strip-search policy to specifically prohibit male officers' presence while a "female offender is in full nude." Am. Compl. Ex. 20, at 1-2; Am. Compl. Ex. 25, at 2.

"The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotation marks omitted). Thus, "as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Id.* at 101-02. "The

Eleventh Amendment does not, however, bar a suit brought in federal court seeking to prospectively enjoin a state official from violating federal law." *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)).

To determine whether Plaintiff's claim for injunctive relief is adequately pled, the undersigned must conduct a "straightforward inquiry" as to whether Plaintiff in her Amended Complaint: (1) "seeks relief properly characterized as prospective," and (2) "alleges an ongoing violation of federal law." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted).[10] As to the first requirement, Plaintiff clearly seeks prospective relief through a change in what Plaintiff describes as a current MBCC strip-search policy or procedure. *See* Am. Compl. Ex. 20, at 1-2; Am. Compl. Ex. 25, at 2. As to the second requirement, however, Plaintiff does not allege an ongoing violation of federal law.

Even liberally construed, Plaintiff's Amended Complaint identifies only one instance where a male MBCC correctional officer detained a female MBCC inmate while the inmate was undressed—i.e., when Defendant Ford detained Plaintiff on December 25, 2010. *See generally* Am. Compl. at 2-4, 7-14. Plaintiff neither states that this is an ongoing problem, *see Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997);

---

[10] The purpose of this inquiry is to test whether a plaintiff is asking a federal court to issue a prospective declaratory or injunctive order, as required to fall within the exception to Eleventh Amendment immunity established in *Ex parte Young*, 209 U.S. at 159-160. *See Johns*, 57 F.3d at 1552-53. The inquiry nevertheless provides a useful framework for evaluating whether Plaintiff has alleged, for purposes of this claim (construed as an official-capacity claim under § 1983 against Ms. Newton-Embry's and Mr. Moham's successor, *see* Fed. R. Civ. P. 25(d), adequate facts to support a request for prospective injunctive relief.

*Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012), nor alleges any facts supporting a reasonable inference that MBCC's current strip-search policy allows male guards to routinely encounter nude female inmates under circumstances that are not reasonably related to a legitimate penological interest. *See Farmer v. Perrill*, 288 F.3d 1254, 1259-60 (10th Cir. 2002) (citing *Wolfish*, 441 U.S. at 559; *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Accordingly, the undersigned recommends that Plaintiff's claim for prospective injunctive relief be dismissed without prejudice for lack of subject-matter jurisdiction. *Cunningham v. Univ. of N.M. Bd. of Regents*, 531 F. App'x 909, 915 (10th Cir. 2013) (holding that a § 1983 claim which did not fall within the *Ex parte Young* exception to Eleventh Amendment immunity "was properly dismissed by the district court for lack of subject-matter jurisdiction"); *see Verizon Md., Inc.*, 535 U.S. at 636-37 ("The inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim."); *cf. Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claim.").

## RECOMMENDATION

The undersigned recommends that Plaintiff's Amended Complaint (Doc. No. 11) be dismissed in its entirety. Plaintiff's claims against Defendants Ford, Garrett-King, and Unnamed MBCC Officials should be dismissed with prejudice and the claims against Defendants Moham and Newton-Embry dismissed without prejudice. It is further

recommended that the dismissal count as a prior-occasion "strike" for purposes of 28 U.S.C. § 1915(g).

NOTICE OF RIGHT TO OBJECT

Plaintiff is advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by July 21, 2016, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Plaintiff is further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 30th day of June, 2016.


CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE